Michael A. Alfred, Esq. (SBN 113716)
LAW OFFICE OF MICHAEL A. ALFRED APC
7220 Trade Street, Suite 101
(858) 566-6800 PHONE
(619) 330-2442 FAX
info@alfredlawoffice.com

Attorney for Plaintiff
**HIEN LE DANG and THANH HUNG NGUYEN**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HIEN LE DANG and THANH HUNG NGUYEN,**<br><br>        **Plaintiffs,**<br><br>    v.<br><br>**FIRST HORIZON HOME LOAN CORP.(aka FIRST TENNESSEE); NATIONSTAR MORTGAGE, LLC; DOES 1 TO 1000,**<br><br>        **Defendants.** | Civil Case No.: 12cv0343 JAH(NLS)<br>(original civil case number 37-2011-00102376)<br><br>**Assigned to: The Honorable Judge John A. Houston**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES & EQUITABLE RELIEF ARISING FROM:**<br><br>1.  **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>2.  **CANCELLATION OF CONTRACT**<br>3.  **UNFAIR BUSINESS PRACTICES**<br>4.  **ACTUAL FRAUD**<br>5.  **NEGLIGENT LENDING**<br>6.  **VIOLATION OF FINANCE LENDERS LAW**<br>7.  **VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT** |

Plaintiffs HIEN LE DANG and THANH HUNG NGUYEN allege herein as follows:

1

# TABLE OF CONTENTS

2

Jurisdictional Venue………………………………………………………………    2

3

Venue Allegations………………………………………………………………….   3

4

Standard of Review……………………………………………………………….6

5

-   State Law v. Federal

    Law…………………………………………………………………......    6

6

-   Preemption

7

    …………………………………………………………………………....   7

8

-   Equitable Tolling Provisions in

    General…………………………………………………………......    8

9

-   Equitable Tolling in Mortgage

    Cases………………………………………………………......    9

10

-   Cal. Civ. Code section 1632 in

11

    general…………………………………………………………......    10

12

-   Section 1632

    Applies……………………………………………………………….. 11

13

-   Cal. Code of Civ. Proc. Section

14

    338(d)…………………………………………………………......    12-13

15

First Claim (Breach of Covenant of Good Faith and Fair

16

Dealing)………………………………………………......................................    13

17

Second Claim (Cancellation of

18

Contract)……………………………………………………………......    17

19

Third Claim (Unfair Business

20

Practices)………………………………………………………………......    18

-   Unlawful Business Practices……………………………………    19

21

-   Fraudulent Business

22

    Practices………………………………………………………......    21

23

-   Unfair Business Practices……………………………………    23

-   UCL Not Preempted by Federal Law………………………………    24

24

-   UCL Pled with

25

    Specificity……………………………………………………    25

26

Fourth Claim (Fraud)……………………………………………………    26

-   Actual Fraud …………………………………………………….    26

27

-   Misrepresentation……………………………………………………    27

28

-   Knowledge……………………………………………………    29

- Intent to Defraud/ Induce Reliance.................................................... 30
- Justifiable Reliance.................................................................... 30
- Damages................................................................................ 31
- Constructive Fraud.................................................................... 31
- Plaintiffs have Pled Fraud with
  Specificity.................................................... ...  ...................... 32

Fifth Claim (Negligent Lending)....................................................... 33
- Duty................................................................................... 33
- Breach................................................................................ 34
- Causation.............................................................................. 36
- Damages............................................................................... 37
- Agency Relationship Implicates all Parties
  ......................................................................................... 37

Sixth Claim (Violation of Finance Lenders

Law)................................................................................... 38

Seventh Claim (Violation of Fair Debt Collection Practices

Act)................................................................................... 42

Prayer for Relief...................................................................... 45

## TABLE OF STATUTES & CASES

*106 A.L.R. 1338* (originally published in 1937)

.......................................................................... 11

12 C.F.R. §560.2; *§7.4007*

.......................................................................... 7

12 C.F.R. 34.4(b)(4)

.......................................................................... 40

12 U.S.C.A. § 1461.

.......................................................................... 7

*1632 et. seq*........................................................10, 11; 17-18; 28

*AlTrade Finance Inc. v. Petra Int'l Banking Corp.* 846 F2d 1190 (9th

Cir.1988)............................................................... 7

*Baston v. Strehlow,* (1968) 68 Cal.2d 662, 674-75.)

………………………………….......................................……………….. 33

*Briosos v. Wells Fargo Bank*, 737 F.Supp.2d 1018 (N.D.Cal.2010).

…………………………………….................................................................…… 25

*Brown v. Wells Fargo Bank, N.A.,* D.D.C.2012, 2012 WL 2367087

…………………….................................................................……………….. 8

*Business & Prof. Code §17200*

… … … … … … … … … … … … … … … … … … … … … … … … … … …...................... … … …. 18

Cal. Civ. Code § 1572 (West)

…………………………………………………………………................… 27

*Cal. Civ. Code § 1788.2(b), (e), (f), (h); see also 8 Witkin, Cal. Proc. 5th (2008)*

… … … … … … .......................................................................................... … … … … 42

*Cal. Civ. Code § 2945.1 (c)*

…………………………………………………………………........ 35

Cal. Civ. Code §1572)

…………………………………………………………………. 26

*Cal. Civ. Code §1788.2(c), (g); see also 8 Witkin, Cal. Proc. 5th (2008)*

…………………………….......................................................................….. 42

*Cal. Civ. Code §1788.2(c), (g); see also 8 Witkin, Cal. Proc. 5th (2008)*

……………………………….............................................................…. 43

*Cal. Civ. Pro. Code §*

*335*…………………………………………………………………… 37

*Cal. Fin. § 4973(l)(1)*

… … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … … 39

Cal. Fin. Code § 22009 & 22203

…………………………………………………………………............ 38

*Cal. Fin. Code §2000 et seq*

… … … … … …. … … … … … … … … … … … … … … … … … … … … … … … … … … .................. 38

Cal.Prac. Guide Pers. Inj. Ch. 2(II)-A

.………………………………………………………….......................... 36

Cal.Prac. Guide Pers. Inj. Ch. 2(II)-A........................................................... 37

California Civil Code § 2945.3 ..................................................................... 11

California Civil Code Section 1573 ............................................................... 31

*California Code of Civil Procedure § 338 (d)* ............................................... 12

*Camacho v. Automobile Club of Southern California,* (2006) 48 Cal.Rtr. 3d 770 ................................................................................................................. 22

*Castaneda v. Saxon Mortg. Services, Inc.,* 687 F. Supp. 2d 1191 (E.D. Cal. 2009) ............................................................................................................. 26

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163 ....................................................................................................... 21, 22

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 2- Cal.4th 163 .................................................................................... 18

*City of Hollister v. Monterey Ins. Co.* (2008) 165 CA4th 455 ................................................................................................................ 14

*Daly v. United Healthcare Ins. Co.,* 2010 WL 4510911 (N.D. Cal.) ................................................................................................................ 14

*Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152 (9th Cir. 2012). ................................................................................................................. 9

*De Villers v. County of San Diego,* (2007) 156 Cal.App.4th 238 ................... 37

*Emrich v. Touch Ross & Co.* (9th Cir. 1988) 846 F2d 1190 ................................................................................................................ 13

*Falcocchia v. Saxon Mortg., Inc.,* (2010) 709 F.Supp.2d 873, 885 .................................................................................................................. 14

*Falk v. General Motors Corp.,* N.D.Cal.2007, 496 F.Supp.2d 1088 ................................................................................................................. 27

Fin. Code § 4973(l)(2) ................................................................................. 19

*Fleeger v. Bell,* 95 F. Supp. 2d 1126.............................................................. 42

*Florio v General Acci. Fire & Life Assur. Corp.* (1968, CA2d NY) 396 F2d

510……………………...…................................................................... 26

*Gruenberg v. Aetna Ins. Co* (1973) 9 C3d

566…………………………………………………................................ 13

*Guaranty Trust Co. of New York v. York* (1945) 326 U.S.

99…………………………………….................................................. 7, 13

*Heintz v. Jenkins (514 U.S. 291 (1995))*

……………………………………………………….............................. 44

*In re Pearl Maxwell* (281 B.R. 101 (Massachusetts

2002))...................................................................................................... 44

*Jordan v. Paul Financial,* 745 F.Supp. 2d, 1084

…………………………………………….......................................... 22

*Lazar v. Superior Court* (1996) 12 Cal.4th 631 ................................................ 32

Legislative Intent of West's Ann. Cal. Fin. Code §4970

…………………………………………………….................................. 39

*Mangindin v. Washington Mut. Bank* 637 F. Supp.2d 700 (N.D. Cal. 2009)

…………………………………………….......................................... 13

*McKell v. Wash. Mutual, Inc.* (2006) 142 Cal.App.4th 1457,

1471……………………………….................................................... 21

*McMahon v. Grimes* (1929) 206 Cal.526.

......…………..…...................................................................... 27

*Meyer v. Ameriquest Mortg. Co,* 342 F. 3d 899, 902 (9th Cir. 2003)

…………………………………….......8, 13

*Millar v. Grimes* (1929) 206 Cal. 798........................................................ 27

Miller and Starr, 2 Cal. Real. Est. §3:5 (3d. ed.)

………………………………………….…….............................. 36

*Mirkin v. Wasserman,* (1993) 5 Cal.4th 1082, 1093

……………………………………………….............................. 32

*Modern Tort Law: Liability and Litigation § 7:2 (2nd ed)* ............................. 37

*Morris v. MBW of N. Am., LLC,* 2007 (WL 3342612 at *3 (N.D. Cal. 2007)

(*citing In re Glenfed, Inc. Sec. Litg.* 42 F.2d 1541, 1547-48, n.7 (9th Cir. 1994) (en

banc.)...................................................................................................... 27

*Morgan v. AT&T Wireless Services, Inc.,* (2009) 177 Cal.App.4th, 1235, 1254

.......................................................................................................... 18, 21

*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509......... 22

*Plastino v. Wells Fargo Bank,* N.D.Cal.2012, 2012 WL 2061515

.......................................................................................................... 7

*Reyes v. Downey Savings and Loan Ass'n, F.A.* (2008) 541 F.Supp. 2d 1108, 1115

.......................................................................................................... 16, 25

*Silvas v. E\*Trade Mortgage Corp.,* 421 F.Supp.2d 1315, 1318 (S.D.Cal.2006)

.......................................................................................................... 24

*Small v. Fritz Cos.,* 30 Cal. 4th 167, 173 (2003)

.......................................................................................................... 26

*United Jersey Bank v. Kensey,* 306 N.J. Super. 540, 551 (App. Div. 1997)

.......................................................................................................... 33

*U.S. Dist. Ct. v. Brewer* 609, F.Supp.2d 1104, 1119 (E.D. Cal. 2009)

citing *Pellegrini v. Wiess,* (2008) 165 Cal.App.4th 515, 524.)

.......................................................................................................... 34

*Vess v. CIBA-GEIGY Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003)

..........................................................................................25-26, 32

*Walker v. Countrywide Home Loans,* 98 Cal.App.4th 1170

citing *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093

..........................................................................................22

*Wyatt v. Union Mortgage Co.,* (1979) 24 Cal.3d

773.................................................................................................... 13

*Wyatt v. Union Mortgage Co.,* (1979) 24 Cal.3d 773, 783

.......................................................................................................... 14

*Yourish v. Cal. Amplifier,* 191 F.3d 983, 993 n. 10 (9th Cir. 1999)

.......................................................................................................... 27

*Zimmer v. Nawabi,* 566 F.Supp.2d 1025 (E.D.Cal. 2008).

.......................................................................................................... 33

**JURISDICTIONAL ALLEGATIONS**

1.      Plaintiff Hien Le Dang, is and at all relevant times herein was, an adult female who resided in and continues to reside in the City of Escondido, County of San Diego, State of California.

2.      Plaintiff Thanh Hung Nguyen, is and at all relevant times herein was, an adult male who resided in and continues to reside in the City of Escondido, County of San Diego, State of California.

3.      The subject property is located in Escondido, County of San Diego, State of California and is commonly described as 3017 Rue Montreax, Escondido, California 92026 (APN # 187-750-19-00).  Legal description attached hereto as **Exhibit A.**

4.      Plaintiffs are informed and believe that Defendant FIRST HORIZON HOME LOAN CORP. (hereinafter "FIRST HORIZON") was at all relevant times a national banking association organized under the laws of the United States, organized and existing under the laws of the State of Kansas and doing business within the State of California.  FIRST HORIZON HOME LOAN CORP. merged into FIRST TENNESSEE in 2007.

5.      Plaintiffs are informed and believe that NATIONSTAR MORTGAGE LLC (hereinafter "NATIONSTAR") was at all relevant times a national banking association organized under the laws of the United States, with its principal place of business in the State of Texas, and doing business within the State of California.

6.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 1000, and therefore sue the Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe that each of the fictitiously named Defendants is responsible in some manner for the injuries to the Plaintiffs alleged herein and that such injuries as herein alleged were proximately caused by such Defendants.

7.      Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned each of the Defendants was the agent, employee, assignee, or successor in interest of the remaining Defendants, and based on said alleged status, was acting within the course and scope of such agency, employment or authority.

8.      The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. §1332.  The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

**VENUE ALLEGATIONS**

9.      All Plaintiffs reside in this district and the claim arose in this district as the subject property is located here.  Therefore, venue is proper.

**CHARGING ALLEGATIONS**

10.     On or around October 28, 2004, Plaintiffs, Hien Le Dang and Thanh Hung Nguyen financed a mortgage loan through Defendant FIRST HORIZON for $460,000 for a thirty-year term at 5.7% initial interest with a 5-year adjustable rate rider that capped at 11.75%. Plaintiffs' starting monthly payment at the 5.7% rate was $2,204.00 but after five years, their payments could increase substantially as their rate could more than double to 11.75%.  **See Exhibit B, C and D; See also See Exhibit H** (copies of mortgage payment checks.)

11.     Plaintiffs are of Vietnamese descent.  Mr. Nguyen speaks and understands little English and Ms. Dang understands common English words and phrases but both speak with heavy accents.  Both Plaintiffs prefer to conduct their business in Vietnamese as it is their primary language, with English being a distant second.

12.     Upon the recommendation of Plaintiffs' real estate agent, who also primarily communicates in Vietnamese, Plaintiffs applied for a mortgage loan with FIRST HORIZON. After making the introduction, Plaintiffs' Vietnamese-speaking Real Estate agent left Plaintiffs to apply by phone with FIRST HORIZON loan officer and broker, Margaret Harris, who was located at a FIRST HORIZON office in Reno, Nevada.  Ms. Harris does not speak Vietnamese.

13.     Despite the apparent fact that neither Plaintiff could understand more than basic English and that they would not be able to understand complex financial terminology in English, FIRST HORIZON's (FIRST TENNESSEE's) loan officer, nevertheless, prepared a loan application (RLA) for an adjustable rate mortgage loan in English and over the phone.  When asked a question, FIRST HORIZON's (FIRST TENNESSEE's) employee merely replied: "Don't worry, just read and then sign."  Further, FIRST HORIZON's (FIRST TENNESSEE's) employee only filled in basic employment information, leaving blank all previous employers and the length of time with current employer.  Neither Plaintiff was asked for any verification of

income, nor did either provide any documentation of income during the entire application process. Broker Margaret Harris typed the RLA because it is done completely in typed print (as opposed to handwriting) and the name of "Margaret Harris" appears at the bottom. **See Exhibit D.**

14.    The loan documents were executed in person at the FIRST HORIZON (FIRST TENNESSEE) office closest to Plaintiffs.

15.    Sometime in 2007, Hien Le Dang was laid off from her job. Despite diligent efforts, she could not find a new job until September of 2009. Even without Ms. Dang's income, Plaintiffs, however, were still able to keep paying their mortgage payments for two years until they exhausted all of their savings. Throughout this time, Plaintiffs only missed three payments (Plaintiffs were told that to qualify for a loan modification they had to miss a payment). Plaintiffs then resumed paying again exhausting their savings.

16.    On or around November 13, 2009, two months after Ms. Dang found a new job and Plaintiffs received a notice from Quality Loan Service Corporation, as Trustee for FIRST HORIZON, with a cure amount of $13,956.00. After Plaintiffs paid off the balance as much as they were able, Quality Loan sent another notice for $4,220.00 on or around November 30, 2009.

17.    On or around June 10, 2011, Defendant FIRST HORIZON sent Plaintiffs a Notice of Trustee Sale, with a sale date of July 6, 2011. The notice stated that the foreclosing party apparently was MetLife Home Loans of Irving, Texas, although Plaintiffs to this day have never received a notice of transfer from FIRST HORIZON to MetLife.

18.    In or around 2008, MetLife Bank, NA, a division of MetLife, Inc., purchased most, if not all, of the residential business of FIRST HORIZON NATIONAL CORP. It is unclear at the filing of Plaintiffs' amended complaint if the Plaintiffs' mortgage was assumed by MetLife Bank. Plaintiffs made several attempts to ascertain whether their loan was serviced by FIRST HORIZON (FIRST TENNESSEE) or MetLife but were unable to obtain a clear answer.

19.    Plaintiffs applied for a loan modification on or around August 12, 2009. **See Exhibit I.** Plaintiffs were told they had to miss a payment in order to qualify for a loan modification package. Plaintiffs filled in all required forms for the loan modification paperwork and sent it back to Defendants. Defendants confirmed that Defendants received the necessary paperwork for a loan modification. Plaintiffs would call every day or every week to check the status until July 2010. Defendants and their agents and employees would oftentimes not call

back (or give a straight answer) or would tell them to "wait to pay" until the loan modification paperwork was reviewed.

20.    In or around July 2010, Defendants offered Plaintiffs a trial payment.  The trial payments were set at $2,650.00 a month; roughly $400 higher a month than what Plaintiffs were paying previously.  Plaintiffs made the payments under the three-month trial plan and continued for another four months even though defendants never notified them of their cancellation of the trial payment plan.

21.    The Loan Trial Payment plan agreement stated in part: "[a]s long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started." (Trial Period Plan/ Frequently Asked Questions")

22.    The July 7, 2010 letter and accompanying Addendum to the Special Forbearance Plan constituted an offer ("To accept this offer and enter into the Trial Period Modification, all borrowers must sign both copies of the enclosed Trial Period Plan. You must then return BOTH signed copies to us – along with your first trial period payment in the amount of $2,650.00 – no later than 07/20/10.").  The offer was accepted when Plaintiffs abided by the terms set forth above (returning both signed copies and a check in the amount of $2,650.00 on or before July 30, 2010.)

23.    Thus, the Loan Trial Payment Plan is a contractually binding agreement because Plaintiffs agreed, by signing the document, to pay the required $2,650 a month under the Trial Period Plan in exchange for Defendants consideration of a permanent loan modification.

24.    The loan Trial Payment Plan also stated that "[d]defaulting on this Trial Period Modification eliminates the opportunity for a modification of your loan terms."

25.    Plaintiffs have made all trial payment periods of $2,650.00 on time for the requisite three months and beyond.  Defendants failed to disclose any information to Plaintiffs as to why the Trial Payment Plan did not lead to a loan modification acceptance.  Plaintiffs, in essence, were left in the dark.

26.    Defendants failed to comply with their end of the deal by failing to consider Plaintiffs for a loan modification and failing to notify Plaintiffs was to why 1) their Trial Period Plan ended and 2) as to why they were not given a loan modification.

27.    The trustee sale was postponed to September 8, 2011.  On or around July 27, 2011, while Plaintiffs were enduring emotional hardship regarding the impending sale of their home, Defendant FIRST HORIZON (FIRST TENNESSEE) mailed a notice of transfer stating that servicing rights of the loan were sold to NATIONSTAR MORTGAGE LLC., effective August 16, 2011.  See **Exhibit L** for the Notice of Assignment.

28.    On or about August 19, 2011, Plaintiffs approached the Real Estate Law Center, PC.

29.    On or about December 12, 2011, Attorney Chad Pratt filed a Complaint for Damages and Equitable Relief in the Superior Court of California, County of San Diego, after which Defendants moved to the U.S. District Court for the Southern District of California, based on alleged diversity.  The case was assigned to the Honorable Judge John Houston.

30.    On or about February 16, 2012, Defendants FIRST HORIZON/ FIRST TENNESSEE NATIONAL ASSOCIATION  and NATIONSTAR filed a Motion to Dismiss, to which Mr. Pratt as counsel for Plaintiffs filed an opposition on April 2, 2012.  Defendants filed a reply on April 9, 2012. (Note: former counsel Pratt did not file an opposition to dismiss against MetLife and MetLife was dismissed from this suit without prejudice.)

31.    In Defendants' oppositions, Defendants contend that Plaintiffs are judicially estopped from "pursuing his allegations in this case" because Plaintiff did not list this case on the schedules.  Plaintiff Thanh Nguyen filed for bankruptcy in September of 2011.  Because Plaintiffs did not file a civil complaint for another three months, Plaintiffs' bankruptcy counsel did not indicate there were other pending cases.  Additionally, Plaintiffs' Bankruptcy petition was dismissed – another reason why Defendants' allegations are moot.

32.    It was thereafter that Plaintiffs sought the assistance of new counsel and approached The Law Office of Michael A. Alfred.  This office has substituted as counsel.  This office made a number of attempts at contacting Attorney Pratt for the client file and finally received the file on January 16, 2013.

33.    On or around December 18, 2012, the Honorable Judge John Houston granted Defendants' Motion to Dismiss while giving Plaintiffs leave to amend.

### STANDARD OF REVIEW

34.    *State Law v. Federal Law.*  Federal Courts apply state law in substantive cases. The statute of limitations is deemed "substantive" under the *Erie* doctrine and its progeny.

Federal Courts therefore apply state law statutes of limitations in diversity cases as would be applied in a state court: "[a]s to consequences that so innately affect recovery or non-recovery a federal court in a diversity case should follow state law." *Guaranty Trust Co. of New York v. York* (1945) 326 U.S. 99; *AlTrade Finance Inc. v. Petra Int'l Banking Corp.* 846 F2d 1190 (9th Cir. 1988).

35.     ***Preemption***: In general "preemption analysis begins with a presumption against preemption." *Reyes v. Downey Savings & Loan Ass'n, F.A.,* (2008) 541 F.Supp. 2d 1108. In order to claim preemption, Defendants must establish proof that each of them is a federal savings association. 12 C.F.R. §560.2 Such associations are those chartered under The Home Owners Loan Act or "HOLA" §5(o). 12 U.S.C. § 1464(o). A defendant must demonstrate that it is such an entity before the defendant may benefit from the preemption defense. *Falcocchia v. Saxon Mortg., Inc.* (2010) 709 F. Supp. 2d 873, 886. Here, Defendants have not offered any evidence proving that they are a federal savings association. In any event, there are exceptions under both the National Bank Act and HOLA where state laws are not preempted. *12 C.F.R. §7.4007; 12 C.F. R. §560.2(c)*. Contracts are one of the enumerated exceptions.    In particular, HOLA specifically exempts causes of actions pertaining to contract law, real property law, homestead laws, and tort laws to name a few. *See 12 C.F.R. §560.2(c)*.

36.     Because Plaintiffs allege breach of implied covenant of good faith and fair dealing, which is inherent in all contracts and because Plaintiffs allege that the loan contract was not properly filled out nor was it translated into Vietnamese and Defendants breached the trial payment plan contract, the case at hand would fall under such exception.

37.     More specifically, courts have ruled that HOLA did not apply in similar situations as to Plaintiffs where Defendants made fraudulent misrepresentations that Plaintiffs qualified for a loan modification. *Plastino v. Wells Fargo Bank,* 2012 WL 2061515. [Mortgagor's state law claims, alleging that mortgagee made fraudulent misrepresentations that she qualified for a loan modification based on her $110,000 salary, that it would not accept any new payments until trial modification began, and that no foreclosure sale would be conducted while loan modification process was underway, were not preempted by HOLA, where the state law claims only incidentally affected lending and did not seek to impose additional requirements on mortgagee, nor did they depend on the contention that all homeowners were entitled to loan modifications.] *See also 12 U.S.C.A. § 1461.*

38.     Further, courts have held that HOLA does not apply to allegations that the bank and its successor in interest incorrectly stated Plaintiffs' assets. *Brown v. Wells Fargo Bank, N.A.,* 2012 WL 2367087. [Allegations in borrower's complaint against federal savings bank and its successor in interest, regarding entry of incorrect assets and income on loan application prepared by an employee of the bank, concerned affirmative misrepresentations that did fall within scope of regulation purporting to impose requirements regarding disclosures made during mortgage lending process, so that the borrower's common law fraud claims based on these affirmative misrepresentations were not preempted by either the Home Owners' Loan Act (HOLA) or its accompanying regulations; a contrary holding would mean that federal savings associations were free to lie to their customers with impunity.] *See also* 12 U.S.C.A. § 1461

39.     Lastly, a number of courts have recognized the fact that HOLA does not preempt the claims alleged in Plaintiffs' pleadings. For example, in *Fenning v. Glenfed,* the court held that Plaintiffs' causes of action (including unfair and deceptive business practices, fraud and negligent misrepresentation) were not preempted by HOLA. *See Fenning v. Glenfed* (1995) 40 Cal.App. 4th 1285; *Sepulveda v. People ex rel. Sepulveda v. Highland Federal Sav. and Loan* (1993) 14 Cal.App.4th 1692.

40.     Lastly, state law is not preempted when it is more restrictive than federal law as discussed further in this Amended Complaint.

41.     ***Equitable Tolling Provisions in General:*** Tolling provisions are treated as an integral part of a statute of limitations. *Wilson v. Garcia* (1985) 471 U.S. 261. In diversity cases, "federal courts apply whatever tolling provisions are recognized under state law." *Emrich v. Touch Ross & Co.* (9th Cir. 1988) 846 F2d 1190.

42.     Courts have suggested that equitable tolling principles are to be read into every federal statute of limitations unless Congress expressly provides to the contrary in clear and unambiguous language. *See Rotella v. Wood,* (2000) 528 U.S. 549, 560-561.

43.     "To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *Id.* at 460–61, 46 Cal.Rptr.3d 131 (citation and quotations omitted).

44.   Here, as discussed further below, English is not very comprehensible for Plaintiffs. Because they did not properly understand the loan documents that Defendants failed to provide in Vietnamese, Plaintiffs could not have discovered that their interest rate would dramatically increase until a much later date. Plaintiffs also could not have discovered or realized that they were set up for likely default. Until discovery, Plaintiffs diligently made their loan payments. Plaintiffs exercised due diligence by attempting to cure default through exhausting their savings. Plaintiffs also exercised due diligence by retaining counsel in 2011.

45.   *Equitable tolling in Mortgage Cases:* For equitable tolling to apply in a mortgage case, plaintiffs would have to allege undisclosed credit terms or fraudulent concealment on the part of the loan originator that prevented them from discovering their claims. *Meyer v. Ameriquest Mortg. Co.* 342 F. 3d 899, 902 (9th Cir. 2003).

46.   A claim for fraudulent concealment under California law requires that: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152 (9th Cir. 2012).

47.   Equitable tolling applies to the case at hand because FIRST HORIZON/ FIRST TENNESSEE were the originators of the loan and a loan broker. Defendants concealed or at least failed to disclose material terms of the loan contract. For instance, Defendants did not request for verification of income but instead hastily drafted the loan application over the phone with Plaintiffs (who had no interpreter). Furthermore, Defendants were aware that English was a second language for Plaintiffs because Defendants' representatives communicated via telephone with Plaintiffs and would have ascertained Plaintiffs' heavy accent. Plaintiffs have asserted that Vietnamese is by far their preferred language of communication. Defendant also concealed as to why they did not grant Plaintiffs a loan modification despite Plaintiffs fulfilling their end of the bargain.

48.   *Because a Vietnamese Translation was not provided, the Statute of Limitations has been Equitably Tolled.*

a. *Cal. Civ. Code § 1632 et. seq.* **in General**

California Civil Code section 1632 states the following:

i. …(a) (3) According to data from the United States Census of 2000, of the more than 12 million Californians who speak a language other than English in the home, approximately 4.3 million speak an Asian dialect or another language other than Spanish. The top five languages other than English most widely spoken by Californians in their homes are Spanish, Chinese, Tagalog, Vietnamese, and Korean. Together, these languages are spoken by approximately 83 percent of all Californians who speak a language other than English in their homes.

ii. (b) Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, **shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract** or agreement in the language in which the contract or agreement was negotiated, **which includes a translation of every term and condition** in that contract or agreement:(1) A contract or agreement subject to the provisions of Title 2 (commencing with Section 1801) of, and Chapter 2b (commencing with Section 2981) and Chapter 2d (commencing with Section 2985.7) of Title 14 of, Part 4 of Division 3. (2) A loan or extension of credit secured other than by real property, or unsecured, for use primarily for personal, family or household purposes. (3) A lease, sublease, rental contract or agreement, or other term of tenancy contract or agreement, for a period of longer than one month, covering a dwelling, an apartment, or mobile home, or other dwelling unit normally occupied as a residence. (4) Notwithstanding paragraph (2), **a loan or extension of credit for use primarily for personal, family or household purposes** where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions Code, or Division 7 (commencing with Section 18000), or Division 9 (commencing with

Section 22000) of the Financial Code. (5) Notwithstanding paragraph (2), a reverse mortgage as described in Chapter 8 (commencing with Section 1923) of Title 4 of Part 4 of Division 3. (6) A contract or agreement, containing a statement of fees or charges, entered into for the purpose of obtaining legal services, when the person who is engaged in business is currently licensed to practice law pursuant to Chapter 4 (commencing with Section 6000) of Division 3 of the Business and Professions Code. (7) **A foreclosure** consulting contract subject to Article 1.5 (commencing with Section 2945) of Chapter 2 of Title 14 of Part 4 of Division 3.

iii.   (c) Notwithstanding subdivision (b), for a loan subject to this part and to Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions Code, the delivery of a translation of the statement to the borrower required by Section 10240 of the Business and Professions Code in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated, is in compliance with subdivision (b).

iv.   (d) At the time and place where a lease, sublease, or rental contract or agreement described in subdivision (b) is executed, notice in any of the languages specified in subdivision (b) in which the contract or agreement was negotiated shall be provided to the lessee or tenant.

49.   *Section 1632 Applies to the Loan at Issue:* While Section 1632(a)(1) generally excludes loans secured by real property, Section 1632(b)(4) identifies transactions specifically covered by the statute: "a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240) of Chapter 3 of Part 1 of Division 4 of the Business and Professions Code...." Cal. Civ.Code 1632. Section 10240 of the California Business and Professions Code in turn applies to certain loans secured by real property that are negotiated by a real estate agent. Cal. Bus. & Prof.Code 10240. Section 1632 thus applies to the loan at issue. *Marcelos v. Dominguez*, 2008 WL 1820683 (N.D. Cal. Apr. 21, 2008)

50.   Similarly, California Civil Code § 2945.3 mandates the following:

1
2
3
4
5
6

"the foreclosure consultant shall provide the owner, before the owner signs the contract, with a copy of a completed contract written in any other language used in any communication between the foreclosure consultant and the owner and in any language described in subdivision (b) of Section 1632 and requested by the owner. If English is the language principally used by the foreclosure consultant to describe the foreclosure consultant's services or to negotiate the contract, the foreclosure consultant shall notify the owner orally and in writing before the owner signs the contract that the owner has the right to ask for a completed copy of the contract in a language described in subdivision (B) of Section 1632." *Cal Civil Code § 2945.3(c)* (West)

7
8
9

51.    At no time did agents or representatives of FIRST HORIZON/FIRST TENNESSEE or NATIONSTAR provide Plaintiffs with a Vietnamese translation of the loan documents; nor did they provide a translator to explain the documents to Plaintiffs in their native language.

10
11
12
13

52.    To date, Plaintiffs have not received their loan documentation in Vietnamese from Defendants. As a result, the statute of limitations has not begun to run because Plaintiffs, whose native language is Vietnamese, have not become fully aware or comprehensible of the harm incurred from Defendants.

14
15
16
17
18
19
20

53.    ***In the Alternative, California Code of Civil Procedure §338(d) regarding tolling applies.*** An exception to the general rule of accrual of a cause of action is the "discovery rule," invoked by Plaintiffs, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *See Fox v. Ethicon Endo-Surgery, Inc.* , 35 Cal. 4th 797, 806-7 (2005). Plaintiffs did not discover the harm caused by Defendants because Plaintiffs never received the documents in Vietnamese. Alternatively, Plaintiffs were only made aware of the harm when they retained an attorney in 2011. Nevertheless, equitable tolling applies.

21
22
23
24
25
26
27
28

a.   ***California Code of Civil Procedure § 338 (d)*** states the following:

"an action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting fraud or mistake." The statute "will not begin to run until the facts which constitute the fraud or mistake which is the ground for the reformation are discovered, or, at any rate, until the time when, by use of due diligence, they ought to have been discovered by the party applying for the relief, or his privy." 23 R.C.L. p. 353, § 50 *as appeared in* 106 A.L.R. 1338

(Originally published in 1937). As a result, "in nearly all jurisdictions, the statute of limitations does not begin to run against an equitable cause of action for the reformation of an instrument because of fraud or mistake until the fraud or mistake has been, or by the exercise of reasonably diligence ought to have been discovered." *106 A.L.R. 1338* (originally published in 1937).

b. Because this case has been filed in the Southern District of California, California Rules for substantive issues including the statute of limitations applies.

c. Therefore, if the Court finds that Equitable Tolling does not apply, then in the alternative, Plaintiffs assert that CCP § 338 *et seq.* is governing law for this Court and that the statute of limitations began to run when Plaintiffs first obtained counsel in 2011.

**FIRST CLAIM FOR RELIEF**

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

**(Asserted against all Defendants)**

54.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

55.    As stated *supra*, California state laws are applied to statute of limitations and tolling issues. *Guaranty Trust Co. of New York v. York* (1945) 326 U.S. 99; *AlTrade Finance Inc. v. Petra Int'l Banking Corp.* 846 F2d 1190 (9th Cir. 1988); *Emrich v. Touch Ross & Co.* (9th Cir. 1988) 846 F2d 1190.

56.    Pursuant to CCP § 338 *et. seq.* the cause of action in a fraud case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting fraud or mistake." *CCP § 338 (d).*

57.    As stated, for equitable tolling to apply in a mortgage case, Plaintiffs would have to allege undisclosed credit terms or fraudulent concealment on the part of the loan originator that prevent them from discovering their claims. *Meyer v. Ameriquest Mortg. Co., supra,* 342 F.3d 899, 902 (9th Cir. 2003).

58.    The basis to a breach of covenant of good faith and fair dealing is fraud. As such, the statute of limitations has not run.

59.    In California, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. A party to a contract has a duty not to deprive

the other party of the benefits of the contract. *See Gruenberg v. Aetna Ins. Co* (1973) 9 C3d 566; *Mangindin v. Washington Mut. Bank* 637 F. Supp.2d 700 (N.D. Cal. 2009).

60.     A breach of the implied obligation of good faith and fair dealing is present not only when a party acts in bad faith, but also when a party acts in a "commercially unreasonable manner." *See* 23 Williston on Contracts § 63:22 (4th ed.); *see also Wyatt v. Union Mortgage Co.,* (1979) 24 Cal.3d 773, 783.

61.     The covenant is implied as a means of "filling in" the terms of the contract only when the express terms are silent or ambiguous regarding the obligation of the parties. (*See* Miller & Starr §1:61 "The Implied Covenant of Good Faith and Fair Dealing.")

62.     A "loan itself is a contract that carries with it an implied covenant." *Falcocchia v. Saxon Mortg.. Inc.,* (2010) 709 F.Supp.2d 873, 885.

63.     The covenant is included within any loan agreement between a lender and a borrower. *See* Miller and Starr California Real Estate 3d, 12 Cal. Real Est. § 36:17 (3d ed.)

64.     It also requires each contracting party "to do everything that the contract presupposes that he will do to accomplish its purpose." *City of Hollister v. Monterey Ins. Co.* (2008) 165 CA4th 455, 491. In other words, this "implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal.App.3d 1371; 1393; *Daly v. United Healthcare Ins. Co..* 2010 WL 4510911 (N.D. Cal.); *see also City of Hollister v. Monterey Ins. Co.* (2008) 165 CA4th 455, 491.

65.     Here, a contract existed between Plaintiffs and Defendants in the form of the lending agreements and between Plaintiff and FIRST HORIZON in the form of the "Special Forbearance Plan" (or trial payment plan).

66.     Paragraph 22 of the Deed states in part that "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument…The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice…" *See* Paragraph 22 of the Deed of Trust.

67.     To the best of their ability, Plaintiffs do not recall being notified of, nor do they have in their possession, a Notice of Acceleration as provided for in the Deed.

68.     Moreover, it is required for all payments made at closing to be disclosed to the borrowers in detail.  Plaintiffs, however, were merely notified that a payment was made to FIRST HORIZON; Plaintiffs were not notified as to how much of a payment (or kickback), was in fact paid.   Because of this nondisclosure, Plaintiffs have adequately pled fraudulent concealment. See **Exhibit E.**

69.     Also, Plaintiffs allege that the Loan Application was hastily and sloppily filled out as the numbers do not correctly add up. See **Exhibit D.**

70.     Accordingly, the covenant of good faith and fair dealing was breached.

71.     Additionally, this covenant was breached with regards to the "Special Forbearance Plan" (or the trial payment plan).

72.     A contract was formed when Plaintiffs signed the Special Forbearance Plan. See **Exhibit J.**

73.     This contract stated that "[c]ompliance with this plan will give you the opportunity to save your home." *See* the Trial Agreement Addendum.  Moreover, it states that "[s]hould you comply with the scheduled payments, First Horizon will re-consider you for options prior to the last Balloon payment scheduled.  We will convert the Special Forbearance Type II Plan to one of the following options: (1) Mortgage modification: If you can make the payments on your loan, but you do not have enough money to bring your account current, First Horizon may be able to change one or more of terms of your original loan  to make the payments more affordable." *Id.*

74.     In or around 2009, Plaintiffs called Defendants and requested a loan modification package. Plaintiffs filled in all required forms for the loan modification and sent it back to Defendants. Plaintiffs were placed on a three-month trial payment. The trial payments amounted to $2,650.00 a month, which was higher than the $2,204.17 minimum monthly mortgage payments prior to the loan modification.  Plaintiffs paid the amount on time to defendants under the trial plan.   Plaintiffs kept diligent records as to what check number was used for their payments.

75.     Defendant FIRST HORIZON (a subsidiary of FIRST TENNESSEE) and NATIONSTAR as successor breached the Special Forbearance Plan and, accordingly, breached the covenant of good faith and fair dealing: (1) by giving Plaintiffs a payment plan that exceeded their payment before the trial plan, (2) by accepting Plaintiffs' trial plan payments for well

beyond the three-month trial period (seven months total), (3) by not offering Plaintiffs a loan modification, as bargained, after plaintiffs diligently made every payment even beyond the three-month period.

76.    Thus, even though Plaintiffs fulfilled all requirements under the trial plan, plaintiffs were never notified that the Trial Plan was ending. Soon after Plaintiffs paid their seventh payment under the Trial Plan, Plaintiffs received information that their property was in foreclosure status.

77.    Plaintiffs also allege and believe that because any arrearages were tacked on to amount to a rate of $2,650.00 (higher than the $2,204.17 Plaintiffs were previously paying), then technically, there are no arrearages because Plaintiffs were paying a higher monthly rate under the plan and thereby wiping out those arrearages once they finished the trial plan.

78.    Further, FIRST TENNESSEE, FIRST HORIZON, and NATIONSTAR (as successor in interest) failed to provide a Vietnamese translation of the loan documents. These documents were merely filled in by telephone call (and likely typed later by a FIRST HORIZON representative).   Defendants knew Plaintiffs had heavy accents and that English was not their first language.  Defendants also failed to adequately investigate Plaintiffs' income and Plaintiffs allege that Defendants knew or should have known Plaintiffs could not afford such a large loan especially since the Adjustable Rate Rider was not properly explained to Plaintiffs.  Plaintiffs allege that they were merely told to "sign here."  As such, Defendants were not acting in good faith when they coaxed Plaintiffs into singing the loan papers.

79.    As discussed, this covenant was not only breached at the initiation of the loan. Plaintiffs also allege that Defendants breached the covenant of good faith and fair dealing when Defendants denied Plaintiffs a loan modification and when Defendants failed to allow Plaintiffs an opportunity to cure, as discussed *supra*. Such evidence points to the performance or enforcement of the contract; not merely its formation.

80.    Lastly, this claim for relief is not preempted because, as discussed further under the UCL section, breach of contract principles (which would include breach of the implied covenant because such a covenant is implied in every contract) are not preempted. *See Reyes v. Downey Savings and Loan Ass'n, F.A.* (2008) 541 F.Supp. 2d 1108, 1115.

81.    For these reasons, Defendants breached the implied covenant of good faith and fair dealing.

82.    As the direct and proximate cause of Defendants' actions, Plaintiffs have suffered damages including but not limited to damaged credit and the impending foreclosure of their family home.

**SECOND CLAIM FOR RELIEF**

**CANCELLATION OF CONTRACT**

**(Cal. Civ. Code §§ 1632)**

83.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

84. .  *Cal. Civ. Code §§ 1632(k)*, states "[u]pon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement in the manner provided by this chapter.  When the contract for a consumer credit sale or consumer lease which has been sold and assigned to a financial institution is rescinded pursuant to his subdivision, the consumer shall make restitution to and have restitution made by the person with whom he or she made the contract, and shall give notice of rescission to the assignee." *Cal. Civ. Code 1632* (the above quote was taken from the law enacted in 2003 and would have been active when Plaintiffs and Defendants entered into a loan agreement).

85.    To date, Plaintiffs have not received a copy of the loan documents in Vietnamese as required by section 1632 *et seq.*

86.    Plaintiffs are entitled to rescind the contract under § 1632(k).

87.    Moreover, if one is under a duty to disclose facts to plaintiff, then their failure to do so, upon learning the true facts, gives the Plaintiff a right to rescind the contract. *See Curran v. Helsop* (1953) 115 Cal. App. 2d 476, 481.

88.    Plaintiffs were never notified of the Mortgage Broker Fees as required on every Closing Statement.  The "POC" was merely left blank on the "Closing package" and on the Estimated Closing Statement.  The above referenced documents do not have a breakdown containing a closing statement of any "Mortgage Broker Fee."   The Mortgage Broker Fee to FIRST HORIZON was not disclosed to Plaintiffs as it should have been and no effort was made to disclose it.

89.    Therefore, Plaintiffs are entitled to rescind the contract due to Defendants' failure to disclose their Broker fees.

90.    Plaintiffs are within the statute of limitations for this claim for relief because 1) Plaintiffs never received the required documents in Vietnamese; thus, as a result, the Statute of Limitations has not yet begun to run under equitable tolling principles because Plaintiffs were not made aware of the harms committed by Defendants described *supra*. 2) Alternatively, the statute of limitations for cancellation of contract is four years. The statute of limitations did not begin to run until Plaintiffs were made aware of the harms caused by Defendants in August of 2011, when Plaintiffs hired legal counsel.

### THIRD CLAIM FOR RELIEF
### UNFAIR BUSINESS PRACTICES
### (Violation of Business and Professional Code §§17200, et seq.)

91.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

92.    "Unfair competition" is defined to include "any unlawful unfair or fraudulent business act or practice." *Business & Prof. Code §17200*. By proscribing "any unlawful" business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 2- Cal.4[th] 163, 180. However, the law does more than just borrow. *Id.*

93.    The statutory language referring to "any unlawful, unfair *or* fraudulent" practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. *Id.* Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. *Id.* In other words, a practice is deemed as "unfair" or "deceptive" even if not "unlawful" and vice versa. *Id.*

### "UNLAWFUL" BUSINESS PRACTICES IN VIOLATION OF THE UCL

94.    A business act or practice is "unlawful" under the UCL if it violates any established state or federal law. *Morgan v. AT&T Wireless Services, Inc.*, (2009) 177 Cal.App.4[th], 1235, 1254.

95.    Plaintiffs applied for a mortgage loan with FIRST HORIZON/FIRST TENNESSEE's loan officer (Ms. Margaret Harris) who did not speak Vietnamese. Ms. Harris is

an employee and acted as a loan broker of FIRST HORIZON/FIRST TENNESSEE. The officer would have been able to ascertain right away that English was a distant second language for Plaintiffs. Plaintiffs' real estate agent, who did speak Vietnamese was not on the phone during the entire loan application process, nor did she explain or translate what FIRST HORIZON/FIRST TENNESSEE's officer was stating.

96. Furthermore, Ms. Harris, FIRST HORIZON/ FIRST TENNESSEE's loan officer misrepresented the contents of the loan documents by not asking for necessary financial information that a reasonable loan officer would have requested. For instance, the officer failed to request proof of income. At no time did FIRST HORIZON/ FIRST TENNESSEE, nor did NATIONSTAR as successor in interest, supply Plaintiffs with copies of the loan application in Vietnamese in violation section 1632 of the California Civil Code. NATIONSTAR as successor did not attempt to correct the situation by providing copies in Vietnamese.

97. Further, as discussed in the first claim for relief, Defendants engaged in deceptive business practices by violating the Implied Covenant of Good Faith and Fair Dealing, and as discussed in the fourth claim for relief, Defendants' actions constituted fraud.

98. FIRST HORIZON/ FIRST TENNESSEE, and NATIONSTAR as successor in interest, engaged in deceptive business practices as defined in sections 17200 and 17500 by marketing and funding a predatory loan that not only increased the payments over time, but also forced the Plaintiffs to make payments well beyond what they could afford. Defendants fraudulently recommended, marketed, purchased and/or collected on a debt/mortgage that they each knew of, or should have known of, the illegal nature of the loan and that Plaintiffs would default before the loan term terminated.

99. Also, by violating the following statutes, FIRST HORIZON/FIRST TENNESSEE and NATIONSTAR as successor in interest violated sections 17200 and 17500:

    a. Each Defendant violated Civil Code section 1667 and Financial Code sections 4973 and 50204 by not properly ascertaining whether Plaintiffs qualified for the loan ("the broker shall not steer, counsel, or direct any prospective consumer to accept a loan product at a higher cost than that for which the consumer could qualify based on the loan products offered by the persons with whom the broker regularly does business." Fin. Code § 4973(l)(2). At no time did FIRST HORIZON/ FIRST TENNESSEE or NATIONSTAR when NATIONSTAR

became successor in interest provide Plaintiffs with a Vietnamese translation of the loan documents and in not providing such, Defendants steered Plaintiffs into accepting a loan that they could not qualify for. Moreover, Plaintiffs were told that Plaintiffs had to miss three payment in order to be considered for a loan modification. Plaintiffs did everything they were told; they diligently paid every month even under the higher-rate trial plan. Plaintiffs missed three payments but were able to resume paying after the third month. Plaintiffs, however, did not miss any payments under the trial plan. Nevertheless, Defendants initiated the foreclosure process despite misleading Plaintiffs into thinking a loan modification would be imminent.

b. Each Defendant violated Civil Code section 1708 which forbids injuring the person or property of another because FIRST HORIZON/ FIRST TENNESSEE, through their agents, and NATIONSTAR as successor in interest haphazardly filled in the loan documents without considering whether Plaintiff would indeed qualify for such a large loan. Such failure by Defendants caused Plaintiffs to default resulting in injury to Plaintiffs' property. *See* Cal. Civ. Code § 1708.

c. Each Defendant violated Civil Code §1709 by willfully deceiving Plaintiffs with intent to induce them to sign the loan documents despite being fully aware that Plaintiffs' limited English was not sufficient for Plaintiffs to understand the complex legal and financial terms or even the fact that Plaintiffs' rate was adjustable under the Adjustable Rate Rider. If Plaintiffs knew their payments would climb so high, they would certainly not have signed the documents. Although NATIONSTAR was not a loan originator, they are liable by not correcting this fact and by not providing Plaintiffs a Vietnamese copy of the loan documents they signed. Defendants also misled Plaintiffs into believing a loan modification would be imminent if Plaintiffs did everything Defendants told them to do, which they did. Further, Defendants did not properly notify Plaintiffs of the payments made (including any kickbacks paid) to FIRST HORIZON upon closing. See **Exhibit G** (Closing Instructions, page 2). Under section 1709 Defendants are liable for any damage that Plaintiffs suffered as a result of Defendants' actions or inaction. *See Civ. Code §1709.* Plaintiffs have suffered

damage to their credit, a loss in finances, emotional strife, and severe stress at the imminent threat of loss of their family home.

d. Each Defendant violated Civil Code §1710 by asserting an untrue fact, namely that Plaintiffs could afford such an exorbitant loan. Defendants had no reasonable ground for believing such fact to be true. Further, by not supplying the necessary paperwork in Vietnamese and by conducting a loan application over the phone without an interpreter, Defendants suppressed facts when they were bound to disclose and caused Plaintiffs to be misled into believing they qualified for the loan when they did not. Defendants also did not fully disclose a payment made to FIRST HORIZON upon closing. Lastly, Defendants hastily filled out the loan application form leading to questionable and confusing mathematical calculations under expenses. See **Exhibit D.**

e. Each Defendant violated Civil Code §1550 because by not having the documents in Vietnamese or a translator, Plaintiffs were not able to give their consent to the contract/loan.

100. For these reasons, FIRST HORIZON/ FIRST TENNESSEE and NATIONSTAR as successor in interest, violated the unlawful prong of section 17200.

**"FRAUDULENT" BUSINESS PRACTICES IN VIOLATION OF THE UCL**

101. A business act or practice is "fraudulent" under the UCL if it actually deceives or is likely to deceive members of the consuming public. The common law elements of fraud need not be pled in a Section 17200 action. *See Cel-Tech Comm. v. L.A. Cellular Telephone Co., supra,* 20 Cal.4th at 194. It is not necessary for the alleged wrongful conduct to involve false representation; nor does it require proof of intent, scienter, actual reliance or damages. *Id.*

102. Further, a "UCL claim based on the fraudulent prong can be based on representations that deceive because they are untrue, but 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive…A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' the UCL." *Morgan v. AT&T Wireless Services, supra,* 177 Cal.App.4th at 1255 citing *McKell v. Wash. Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471.

103.    Here, Ms. Harris, FIRST HORIZON/ FIRST TENNESSEE's loan officer misrepresented the contents of the loan documents by not asking for necessary financial information as a reasonable officer would have done. As discussed, *supra,* the officer failed to request proof of income and only part of the loan application was filled out. Moreover, at no time did FIRST HORIZON/FIRST TENNESSEE or NATIONSTAR when it succeeded in interest, supply Plaintiffs with copies of the loan application in their native language (in violation of California Civil Code §1632).

104.    As discussed, each defendant violated the above mentioned Civil Code (sections 1667, 1708, 1709, 1710, 1550) and Financial Codes 4973 and 50204 by not properly determining whether Plaintiffs qualified for the loan, by not providing a Vietnamese translation, by haphazardly filling the loan documents and leaving vital information blank, therefore misleading and concealing information from Plaintiffs.

105.    Lastly, Plaintiffs were led to believe that if they made their payments under the trial plan, which they did, they would receive a loan modification. The trial plan payments were higher than what Plaintiffs paid previously and Plaintiffs diligently made all the payments under the trial plan and beyond. Plaintiffs, therefore, were shocked to discover that despite such payments, Defendants initiated the foreclosure process.

106.    Because the above-mentioned actions were not done and the above statutes violated, it is likely that the public—especially non-native English speakers applying for a loan—would be deceived.

107.    By committing the acts and practices alleged above, Defendants have engaged in unfair business practices within the meaning of California Business and Professions Code §17200, *et seq.*

**"UNFAIR" BUSINESS PRACTICES IN VIOLATION OF THE UCL**

108.    A business act or practice is "unfair" if it violates established public policy or that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 530. Other courts have explained that to determine whether a business practice is unfair, courts must " 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim ....' " (*Walker v. Countrywide Home Loans,*

(2002) 98 Cal.App.4th 1170 citing *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1104. Although the California Supreme Court has criticized these tests, it has failed to offer an alternative test for consumer actions. *Walker v. Countrywide Home Loans, supra,* 98 Cal.App.4th at 1170.

109.   A business practice that is neither unlawful nor fraudulent may, nevertheless, be unfair under the UCL. *Jordan v. Paul Financial, supra,* 745 F.Supp.2d 1084, at 1099 citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163.

110.   Factors of unfairness include (1) the consumer injury must be substantial, (2) the injury must not be outweighed by any countervailing benefits to the consumers or competition; and (3) it must be an injury that consumers could not reasonably have avoided. *Camacho v. Automobile Club of Southern California,* (2006) 48 Cal.Rtr. 3d 770, 777.

111.   Applying these factors to the case at hand, Plaintiffs' injury was and is substantial (the impending loss of their house) and such injury is not outweighed by any countervailing benefits. Further, Plaintiffs could not reasonably have avoided this injury because they were unaware of the contents of the loan due to the fact that it was in English and no translation was provided them.

112.   Plaintiffs' situation is similar to that of the Plaintiffs in *Jordan v. Paul Financial* where the court held that Plaintiffs sufficiently alleged that they did not discover the defects in their loan (in that case it was negative amortization) until they were "locked in" with a harsh payment penalty under the terms of that agreement. *Jordan v. Paul Financial, LLC, supra,* 745 F. Supp. 2d at 1100. Likewise, Plaintiffs did not discover the defects of their loan right away because such documents were not supplied to them in Vietnamese and alternatively, Plaintiffs could not have discovered the full ramification of such defects until Plaintiffs retained an attorney in 2011.

113.   As explained, *supra,* FIRST HORIZON/ FIRST TENNESSEE and NATIONSTAR as successor in interest acted in a deceptive and unfair manner by failing to provide a translator or mortgage documents in Vietnamese when they knew that the Plaintiffs understood little English. By ratifying the Plaintiffs' loan application, Defendants deceived Plaintiffs into thinking Plaintiffs would be able to afford to pay off the loan.

114.   It was also "unfair" for Defendants to fail to disclose to Plaintiffs the amount of the fees paid to the broker and kickbacks paid to FIRST HORIZON at origination. See **Exhibit G** (Closing Instructions, page 2).

115.   Further, it was "unfair" for Defendants to initiate foreclosure after telling Plaintiffs that in order to qualify for a loan modification, Plaintiffs had to miss a payment (Plaintiffs missed three payments in a row and then make every payment in the trial plan). However, Plaintiffs were not given a loan modification in return.

116.   By committing the acts and practices alleged above and by violating the above-mentioned statutes (i.e. Civil Code sections 1667, 1708, 1709, 1710, 1550 and Financial Codes 4973 and 50204) as well as the statutes mentioned in the causes of action in this complaint, Defendants have engaged in unfair business practices within the meaning of California Business and Professions Code § 17200, *et seq.*

117.   As a direct and proximate cause of the acts of each Defendant, Plaintiffs have suffered by struggling to avoid becoming delinquent on their mortgage loan which has caused Plaintiffs much stress. Plaintiffs are constantly concerned over future adjustments of the loan. Plaintiffs have suffered damages in an amount to be fully determined at time of trial and are entitled to all statutory damages as provided in the above entitled code section.

## UCL NOT PREEMPTED BY FEDERAL LAW

118.   Some courts have held that the Truth in Lending Act or "TILA" preempts state law claims pursuant to 15 U.S.C. §1610 but the preemption provisions of TILA do not preempt state law unless the state law is inconsistent with TILA. *Silvas v. E\*Trade Mortgage Corp.*, 421 F.Supp.2d 1315, 1318 (S.D.Cal.2006). The *Silvas* court suggested that a plaintiff may not go outside the statute of limitations provided in TILA by alleging violation of TILA as the predicate act in a claim for violation of the UCL. *Id.*

119.   As mentioned, section 17200 must be predicated on some other violation of the law. Here, the underlying violations are not based on TILA as TILA was not alleged as a claim for relief in Plaintiffs' original complaint. Rather the underlying violations are the acts explained *infra* and the causes of actions mentioned in this complaint.

120.   As such, the UCL is not preempted in its entirety; UCL claims not based on TILA or TILA-based claims that are not time-barred are allowed to proceed. *Tsien v. Wells Fargo*

*Home Mortg.* 2010 *WL 2198290 at \*3* citing *Jordan v. Paul Fin., supra*, (2010) 745 F. Supp. 2d 1084.

121.   Moreover, courts have found that HOLA did not preempt the UCL where the plaintiff sought to use the UCL to enforce the duties of the contracting obligations. *Gibson v. World Savings & Loan Ass'n*, (2002) 103 Cal.App.4th 1291. Plaintiffs have alleged that Defendants breached the covenant of good faith and fair dealing which is implied in every contract. Plaintiffs also allege that Plaintiffs were never explained in their native language that their interest rate would increase dramatically but were told simply to "sign here [on the contract]." Plaintiffs have also alleged that Defendants caused Plaintiffs to believe they qualified for such an exorbitant loan. As such, Defendants misrepresented material facts and breached the duty to refrain from unfair and deceptive business practices. Plaintiffs, therefore, seek to use the UCL to apply general principles of contract law. *See Reyes v. Downey Savings and Loan Ass'n, F.A.* (2008) 541 F.Supp.2d 1108, 1115, which is similar to the case at hand ("The principles of breach of contract and fraud in the inducement are not specific to lending activities. Further, application of these principles would require no affirmative action or type of representation by a lending institution. Thus, HOLA does not preempt this application of the UCL." *Id.*); *see also Haggarty v. Wells Fargo Bank, N.A.* 2011 WL 445183, Case No. C 10-02416 CRB, 2011 U.S. Dist. WESTLAW 445183 at \*5 (Plaintiffs in that case also alleged a breach of a UCL claim of unfair practices via their allegation of a contractual breach of the implied covenant of good faith and fair dealing. The court held that the UCL claim is "not preempted because the breach of contract claim upon which it is premised is not preempted." The court also stated that even if the National Bank Act applied rather than HOLA, a different outcome would not have resulted. *Id.* at FN 1.)

## UCL IS PLED WITH SPECIFICITY

122.   Further, Plaintiffs' UCL claim is pled with specificity. Defendants, in their prior pleadings, have stated that Plaintiffs failed to meet the elevated requirements of Federal Rule of Civil Procedure 9 (b). This is not true. However, courts have interpreted fraudulent for purposes of the UCL as conduct that is "likely to deceive." *Morgan v. AT&T Wireless Services., Inc.* 177 Cal. App.4th 1235, 1254 (2009), *Bertoli v. Wachovia Corp.,* 2011 WL 5244678 at \*6.

123. As discussed above, Defendants' actions, including but not limited to their failure to properly fill in the loan forms and failing to provide either a translator or a translated copy of the forms, are likely to deceive the public—especially those whose primary language is not English, such as Plaintiffs.

124. Moreover, courts have held that a "mortgage instrument which provides the specific content of the allegedly false representations…as well as the date and place of the alleged fraud" while omitting "the precise identities of the employees responsible" is sufficient under Rule 9(b) "to put defendants on notice of the claims against them." *Jordan v. Paul Financial, LLC* (2010) 745 F. Supp. 2d 1084, 1096; citing *Vess v. CIBA-GEIGY Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

### FOURTH CLAIM FOR RELIEF

### FRAUD

### (Asserted against all Defendants)

*Actual Fraud*

125. Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

126. In California, the essential elements of a claim for fraud are (1) a misrepresentation, false representation, concealment, or nondisclosure, (2) knowledge of falsity, or scienter, (3) intent to defraud, that is, to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Castaneda v. Saxon Mortg. Services, Inc.*, 687 F. Supp. 2d 1191 (E.D. Cal. 2009); *See Briosos v. Wells Fargo Bank*, 737 F.Supp.2d 1018 (N.D.Cal.2010). *See also* Cal. Civ. Code §1572.) Because fraud must be pled with specificity, each of these elements will be analyzed below.

127. Rule 9(b) also requires fraud claims to be plead with particularity. Plaintiff must plead "a) misrepresentation; b) knowledge of falsity (or scienter), c) intent to defraud (i.e. to induce reliance), d) justifiable reliance, and e) resulting damage. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003).

128. California Code of Civil Procedure section 338(d) sets forth that the statute of limitations does not run until discovery ("The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting fraud or mistake.").

129.    It has also been held that a fraud, once committed, is a continuing thing, precluding the defendant from pleading the statute of limitations. 43 A.L.R.3d 429 (Originally published in 1972). Equitable estoppel has been held to apply even though the conduct did not amount to actionable fraud or misrepresentation, it being enough if the plaintiff had been induced to refrain from using such means or taking such action as might save himself from loss. *Id.*; *see also Florio v General Acci. Fire & Life Assur. Corp.* 396 F2d 510 (1968, CA2d NY).

***Misrepresentation***

130.    Misrepresentation can comprise of any of the following: a false representation, concealment, or nondisclosure; *Falk v. General Motors Corp.*, N.D.Cal.2007, 496 F.Supp.2d 1088; Cal. Civ. Code § 1572 (West). Misrepresentation of material fact, with knowledge of falsity, constitutes fraud. (*See Millar v. Grimes* (1929) 206 Cal. 798; *McMahon v. Grimes* (1929) 206 Cal.526.)

131.    Further, California Civil Code Sections 1709 and 1710 define deceit, stating that "one who willfully deceives another with intent to induce the other to alter his or her position to his or her injury or risk is liable for any damages suffered as a result of the deceit." (*Cal. Civ. Code §1709.*)   There are four categories of deceit listed in §1710: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) **the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact;** or (4) a promise made without any intention of performing it. *Cal. Civ. Code §1710* (emphasis added).

132.    "[I]n addition to the 'time, place and content of an alleged misrepresentation,' a complaint 'must set forth what is false or misleading about a statement, and ... an explanation as to why the statement or omission complained of was false or misleading.'" *Yourish v. Cal. Amplifier.* 191 F.3d 983, 993 n. 10 (9th Cir. 1999).   The complaint must also name the persons who made the allegedly fraudulent statements. *See Morris v. MBW of N. Am., LLC,* 2007 (WL 3342612 at *3 (N.D. Cal. 2007) (*citing In re Glenfed, Inc. Sec. Litg.* 42 F.2d 1541, 1547-48, n.7 (9th Cir. 1994) (en banc.).

133.    Plaintiffs applied for a mortgage loan with FIRST HORIZON/ FIRST TENNESSEE's loan officer, Margaret Harris.   Ms. Harris does not speak Vietnamese.

Plaintiffs' real estate agent, who spoke Vietnamese was not on the phone for the entire duration of the phone call nor was she present when Plaintiffs signed the loan documents.

134.   In her October 2004 phone discussion, Ms. Harris misrepresented the contents of loan documents by failing to ask for essential information that a reasonable loan officer would. Such information includes failing to request documentation relating to proof of income. Because the information was taken over the phone, Defendants did not verify Plaintiffs' income.  It can be deduced that Defendant's employee Ms. Harris typed the residential loan application based solely on the information given over the phone.

135.   In their October 2004 phone discussion and October 28, 2004 follow-up meeting, Ms. Harris and/or her agents misrepresented the contents of the loan documents by failing to supply clients with a copy of the loan documents in Plaintiffs' native language of Vietnamese.

136.   Plaintiff Thanh Nguyen cannot read or speak more than a few English words and Plaintiff Hien Dang cannot read sophisticated English and speaks with a heavy accent.

137.   Ms. Harris and/or her agents had a fiduciary duty toward Plaintiffs who entered into the loan agreement after Plaintiffs' real estate agent initiated the negotiations on the loan;

138.   Ms. Harris failed to disclose or supply the loan documents in Vietnamese to Plaintiffs which is required in this instance under *California Civil Code section 1632 et. seq.* because the loan pertains to a personal residence and the loan was initiated by a real estate agent.

139.   Defendants failed to disclose the content of what their broker fee(s) were.  On the Estimated Closing Statement and on the "Closing package," nothing is listed under "POC" detail—no original fees, no attorney fees, and no commissions were disclosed.  In other words, the Closing package does not have a breakdown containing a closing statement of any "Mortgage Broker Fee."  The Mortgage Broker Fee to First Horizon is not disclosed and no effort was made to disclose it.  **See Exhibit E, F, and G.**

140.   In 2009 and 2010, Defendants misrepresented to Plaintiffs the Trial Period Agreement. Defendants wrote in a July 7, 2010 letter the terms of the agreement stating "[t]o accept this offer and enter into the trial Period Modification, all borrowers must sign both copies of the enclosed Trial Period Plan. You must then return BOTH signed copies to us – along with your first trial period payment in the amount of $2,650.00- no later than 07/30/10." However, Plaintiffs were never notified of the termination of the trial plan or the denial of loan

modification consideration even though Plaintiffs abided by all requirements of the trial plan and submitted all required paperwork for a loan modification.

141.   Ms. Harris' name was listed as the point of contact for the loan modification paperwork initiated in 2009.  She and other agents such as "Kristine Hemmen," who also handled Plaintiffs' loan modification paperwork, had a fiduciary duty toward Plaintiffs who applied for a loan modification and were placed on a trial payment plan.  Both Ms. Harris and Ms. Hemmen would be classified as mortgage brokers.

142.   As stated in the Trial Plan, compliance with the Plan gives one the opportunity to save one's home.  Plaintiffs complied with the Plan and even paid more than required thereby eliminating arrearages.  Yet, Plaintiffs were never given the opportunity to save their home because Defendants never notified them of the status of their loan modification and Trial Plan.

143.   Ms. Harris, as an employee of FIRST HORIZON/ FIRST TENNESSEE, acted as an employee for Defendant FIRST HORIZON/ FIRST TENNESSEE.  Therefore, Defendant FIRST HORIZON/ FIRST TENNESSEE is liable for Ms. Harris' actions.

144.   Defendants, by or through their agents and employees, did not explain the material terms of Plaintiffs' loan, did not assess the viability or utility of an interest-only loan for Plaintiffs, did not collect and verify Plaintiffs' income, employment or monetary holdings and approved Plaintiffs for a loan in excess of what Plaintiffs could afford.

145.   NATIONSTAR, as successor in interest, in its capacity as a broker and loan counselor, had a confidential, fiduciary relationship with Plaintiffs.

*Knowledge of Falsity (Scienter)*

146.   The falsity that exists is the failure to disclose proof of income on the loan forms prior to issuing a loan agreement and the failure to issue loan documents in Vietnamese.

147.   Ms. Harris knew or should have known of the falsity because as an employee of the bank, she should have been aware that verification of income is a vital piece of information needed to initiate a loan agreement and that she needed to supply the requisite loan documents in Vietnamese.

148.   Defendants knew or should have known that Plaintiffs were, in good faith, paying on a trial payment four months longer than required and Defendants failed to notify Plaintiffs after the three-month mark or later, that the trial payment period ended or that they were not accepted for a loan modification.

149.   Defendants knew or should have known that Defendants should have enclosed the amount of their broker fee(s) on the Estimated Closing Statement.

*Intent to Defraud/Intent to Induce Reliance*

150.   Ms. Harris knew or should have known of the falsity because as an employee of the bank, she should have been aware of *California Civil Code section 1632 et. seq.*   It is evident that Ms. Harris, as an employee of FIRST HORIZON/ FIRST TENNESSEE intended to defraud and intended to induce reliance when she failed to request Plaintiffs to supply her or her agents with proof of income.   Even in 2003, there existed a requirement under Cal. Civ. Code section 1632 in this instance for the loan agreement to be supplied in the clients' native language.   This is because the loan pertained to the purchase of a residential property and the loan was negotiated by a real estate agent.   Moreover, Defendants were engaged in a trade where discussions in many languages is a common occurrence.

151.   Ms. Harris drafted a loan agreement on the phone without proof of income, a vital piece of information needed to accurately draw up a loan agreement.   Plaintiffs relied on Ms. Harris who acted as a broker.   As a result, Ms. Harris drafted a loan document she knew or should have known would be beyond Plaintiffs' means because Ms. Harris did not adequately take into account Plaintiffs' income when drawing up the paperwork.

152.   Defendants intended to induce reliance in 2009-2010 when they sent Plaintiffs the Trial Payment Plan Agreement.   Defendants implied that if Plaintiffs abide by the terms of the Plan, then they would be considered for a loan modification.   Never notifying Plaintiffs of the status of their loan modification or the termination of the Payment Plan is a testament to the fact that Defendants just wanted Plaintiffs' money with the intent to defraud Plaintiffs who relied on Defendants' misrepresentations.

*Justifiable Reliance*

153.   Plaintiffs justifiably relied on Defendants and their agent(s) and employee(s) had superior bargaining strength over Plaintiffs, who are uneducated and unsophisticated in the area of mortgages, therefore leaving Plaintiffs to justifiably rely on Defendants and their agents and employees.

154.   Plaintiffs relied on Defendants and their agents and employees during the initiation of their loan and Plaintiffs relied on Defendants when Plaintiffs attempted to modify their loan in 2009 and 2010.

*Damages*

155.    As a result of Plaintiffs' justifiable reliance on Defendants' misrepresentations, Plaintiffs have suffered damage in the loss of their good credit as well as a higher payment on the loan and are now being involved in a litigation that they did not expect.

156.    Further, Plaintiffs have suffered anxiety, loss of sleep, physical pain resulting from anxiety because of this process.

· 157.    Therefore, damages can be easily proven by the above-mentioned facts. As such, Plaintiffs meet the requirements for a claim for actual fraud.

*Constructive Fraud*

158.    Plaintiffs reallege and incorporate by reference the above paragraphs as though set forth fully herein.

159.    California Civil Code Section 1573 defines constructive fraud as: (1) in any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, (2) In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud. (Cal. Civ. Code § 1573 (emphasis added).)

160.    As alleged above, FIRST HORIZON/ FIRST TENNESSEE (and NATIONSTAR as successor in interest), in their capacity as a broker and loan counselor, had a confidential, fiduciary relationship with Plaintiffs.

161.    Moreover, FIRST HORIZON/ FIRST TENNESSEE, by or through its agents and employees, did not explain the material terms of Plaintiffs' loan, did not request the vital information of how much the borrowers make annually, did not collect and verify Plaintiffs' income, employment or monetary holdings, did not supply any loan documents in Vietnamese, and approved Plaintiffs for a loan in excess of what Plaintiffs could afford.

162.    Defendants failed to disclose the content of what their broker fee(s) were. On the Estimated Closing Statement and on the "Closing package," nothing is listed under "POC." Moreover, there is no breakdown containing a closing statement of any mortgage broker fees. In fact, to Plaintiffs' best knowledge and belief, no Closing Statement was submitted to Plaintiffs – only the Estimated Closing Statement and the "Closing Instructions."

163.    As Plaintiffs were unsophisticated borrowers who justifiably relied exclusively on the expertise of FIRST HORIZON and its employee Ms. Harris (and NATIONSTAR as successor in interest) as mortgage broker, FIRST HORIZON (and NATIONSTAR as successor in interest) were uniquely situated to gain an advantage over Plaintiffs by prejudicially misleading Plaintiffs with respect to the terms and fees of Plaintiffs' loan and with regards to the loan not being supplied in English. Therefore, the elements for constructive fraud have been met.

**Plaintiffs have Pled Fraud with Specificity**

164.    Plaintiffs have pled with specificity by going through each of the elements of fraud and incorporating how (as discussed above), when (circa 2004), where (Escondido, California/San Diego, California), to whom (against Defendants) and by what means (through a phone call from FIRST HORIZON's / FIRST TENNESSEE's employee, Ms. Harris to Plaintiffs as well as through the above-mentioned loan and closing documents) representations were tendered. *See generally Lazar v. Superior Court* (1996) 12 Cal.4th 631.

165.    Plaintiffs have also made references to Employee Harris and the dates the named representatives talked with Plaintiffs and their authority to do so.

166.    Nevertheless, courts have stated that in alleging fraud regarding a mortgage instrument the fact that "the precise identities of the employees responsible...are not specified in the loan instrument" does not defeat the specificity requirement. *Jordan v. Paul Financial, LLC* (2010) 745 F.Supp. 2d, 1084, 1096. The *Jordan* court stated that "defendants possess the superior knowledge of who was responsible for crafting these loan documents. The nature of the claim is apparent and sufficient to put defendants on notice of the claims against them." *Id.* citing *Vess v. CIBA-GEIGY Corp.,* 317 F.3d 1097, 1106 (9th Cir. 2003). Additionally, the court stated that Plaintiffs sufficiently alleged reliance by stating that they would have behaved differently had they known about the certainty of negative amortization. *Jordan v. Paul Financial, supra* 745 F. Supp. 2d at 1096 citing *Mirkin v. Wasserman,* (1993) 5 Cal.4th 1082, 1093 ("reliance for a fraudulent omission can be shown where a plaintiff proves that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'")

167.    Likewise, Plaintiffs have alleged fraud with specificity because they have named representatives, location and time surrounding the events in question. Nevertheless, courts have

reasoned that Defendants have superior knowledge of who was responsible for crafting the loan documents and, as such, have held that borrowers in similar situations to Plaintiffs properly pled fraud with specificity. *See Jordan v. Paul Financial, supra,* 745 F.Supp.2d at 1096. Plaintiffs have also properly alleged reliance because had the omitted information been disclosed and had there been a translation into Vietnamese, Plaintiffs would have behaved differently.

168.    Therefore, Plaintiffs alleged the claim of fraud with requisite specificity.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENT LENDING
### (As Against All Defendants)

169.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

170.    To plead Negligent Lending, Plaintiffs must plead the elements of duty, breach, causation, and damages.

*Duty*

171.    A mortgage broker owes a fiduciary duty to their client. *Id.* citing Cal.Civ.Code § 2079.24; *Zimmer v. Nawabi*, 566 F.Supp.2d 1025 (E.D.Cal. 2008). Under California Law, a mortgage broker acts in a fiduciary capacity that "not only imposes upon him the duty of acting in the highest good faith toward his principal but also precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency." (*Id.* citing *Wyatt v. Union Mortgage Co.,* (1979) 24 Cal.3d 773, 782; *see also Baston v. Strehlow,* (1968) 68 Cal.2d 662, 674-75.)

172.    Such duty "obligates brokers 'to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals.'" (*Brewer v. Indymac Bank, supra,* 609 F.Supp.2d at 1119 citing *Wyatt v. Union Mortgage, supra,* 24 Cal.3d at 782.)

173.    There exists a fiduciary relationship between Defendants and Plaintiffs. Defendants owe a fiduciary duty because Defendants acted as a broker. FIRST HORIZON acted as a broker both during the initial loan application (through Employee Margaret Harris) and through the 2009-2010 loan modification (through Employee Kristine Hemmen and others).

174.    Therefore, Defendants had a duty to disclose all material terms to Plaintiffs regarding the mortgage loans and associated documents. The parties' relationship is a

relationship of trust and confidence between Plaintiffs and Defendants. Defendants had a fiduciary duty to Plaintiffs as the contracts and transactions Defendants and Plaintiffs were involved in call for full disclosure and perfect good faith between the parties. *United Jersey Bank v. Kensey.* 306 N.J. Super. 540, 551 (App. Div. 1997).

175. Plaintiffs allege that FIRST HORIZON is a mortgage broker (even the Better Business Bureau describes FIRST HORIZON/FIRST TENNESSEE as a mortgage broker, which is available at: http://www.bbb.org/sanjose/business-reviews/mortgage-brokers/first-horizon-home-loans-in-los-altos-ca-239174/). The same is true with FIRST TENNESSEE, which is available at: http://www.bbb.org/knoxville/business-reviews/mortgage-brokers/first-tennessee-home-loans-in-knoxville-tn-10041. As such, FIRST HORIZON/ FIRST TENNESSEE owed fiduciary duties to Plaintiffs. Likewise, the same holds true with NATIONSTAR (see http://www.bbb.org/dallas/business-reviews/mortgage-brokers/nationstar-mortgage-in-lewisville-tx-6002297.) Specifically, FIRST HORIZON, and its successor in interest, NATIONSTAR, had the duty to act in good faith and make a full and accurate disclosure of the terms of the loan.

176. Defendants had a duty to disclose the content of what their broker fee(s) were on the escrow and/or closing documents. The Closing Statement package and the Estimated Closing Statement should have listed a number figure under "POC" on the Closing Statement form(s).

177. Defendants also had a duty to disclose to Plaintiffs when their loan trial payment plan was ending. Instead, they continued to accept Plaintiffs' payments under the plan. Likewise, Defendants had a duty to disclose to Plaintiffs why they were not accepted for a loan modification instead of leaving Plaintiffs in the dark after Plaintiffs diligently abided by all required steps in the trial plan and loan modification process.

***Breach***

178. The elements of a claim for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty and 3) resulting damage. (*See U.S. Dist. Ct. v. Brewer* 609, F.Supp.2d 1104, 1119 (E.D. Cal. 2009) citing *Pellegrini v. Wiess*, (2008) 165 Cal.App.4[th] 515, 524.)

179. FIRST HORIZON (and NATIONSTAR as successor in interest) breached their fiduciary duties by not properly disclosing that they had a right to their loan documents in their

native language under *Cal. Civ. Code 1632 et seq*. Defendants also failed their duties by not adequately requesting Plaintiffs for proof of income thereby issuing a loan they knew Plaintiffs would default on their loan due to lack of income.

180.   Defendants also breached their fiduciary duty by failing to disclose the content of what their broker fee(s) were.   On the Estimated Closing Statement and on the "Closing Instructions," nothing is listed under "POC" – no breakdown of original fees, attorney fees, commissions or the like were disclosed.   To their knowledge and belief, Plaintiffs were not given a final Closing Statement from which they were entitled to.   In essence, the Mortgage Broker Fee to FIRST HORIZON was not disclosed and no effort was made to disclose it.

181.   Again, Defendants breached their fiduciary duty by failing to disclose to Plaintiffs that their trial payment plan ended and failed to give Plaintiff an opportunity to save their home. Instead, Defendants continued to accept Plaintiffs' $2,650.00/ month checks.   Defendants failed to notify Plaintiffs the status of their loan modification leaving Plaintiffs essentially in the dark.

182.   Certain obligations also exist in situations where a foreclosure consultant assist the owner to obtain a loan or advance of funds under Cal. Civ. Code §2945.1(6).  A foreclosure consultant is defined as "any person who makes any solicitation, representation, or offer to any owner to perform for compensation or who, for compensation, performs any service which the person in any manner represents will in any manner do any of the following…(c) [a]ssist the owner to obtain a loan or advance of funds. *Cal. Civ. Code § 2945.1 (c)*.

183.   Plaintiffs were never made aware as to how much of a commission was paid to the FIRST HORIZON broker.

184.   Plaintiffs were never notified of their status of their loan modification and that their trial payment plan was ending.

185.   Defendants, their predecessors or assignors, individually or by and through their employees, agents, or servants engaged in negligent lending. Defendants had a duty to use reasonable care when dealing with Plaintiffs during the mortgage transaction and they breached this duty by failing to:

   a.   List a Mortgage Brokers Fee on the Estimated Closing Statement, and on the Closing Statement package.

   b.   Notify Plaintiffs of the status of their loan modification;

   c.   Explain to Plaintiffs why their payment plan was ending;

d.  Inform Plaintiffs of the nature and terms of these transactions (in English and their native language);

e.  Arrange for and obtain mortgage loans that Plaintiffs could afford based on their income;

f.  Reasonably investigate Plaintiffs' financial circumstances;

g.  Provide loan documents in Plaintiffs' native language of Vietnamese, and;

h.  Comply with all state and federal laws.

186.    Defendants were negligent in that they carelessly and recklessly initiated said mortgages.

187.    Through misrepresentations and omissions of material information, Defendants negligently induced Plaintiffs to enter into these mortgage transactions which have culminated in the present foreclosures.

188.    Defendants failed to obtain loans for Plaintiffs based upon their ability to pay.

*Causation*

189.    As a proximate result of Defendants' breach of fiduciary duty, Plaintiffs suffered harm.  Plaintiffs would never have signed the closing agreements if they were supplied with information in their native language and if Plaintiffs were supplied with detailed information relating to the loan and its adjustable rate rider.

190.    If Plaintiffs knew they would likely default on their loan, they would not have entered into such an agreement.

191.    If Plaintiffs knew that Defendants failed to list their Mortgage Broker fee, they never would have entered into such an agreement.

192.    It was foreseeable to Defendants that Plaintiffs would be unable to make the monthly payments on these loans.

193.    It was foreseeable that Plaintiffs did not nor could not understand the gravity of entering into a loan agreement without being supplied documents in Vietnamese.

194.    It is foreseeable that failing to list the commission given to the FIRST HORIZON broker under the "POC" tab of the Closing Statement deprives Plaintiffs of this information from which they are entitled to, and as a result, harms Plaintiffs.

*Damages*

195.   Plaintiffs suffered serious injury as the proximate result of the negligence committed by the Defendant mortgage lenders.

*Agency Relationship implicates all Parties*

196.   Furthermore, an agency is a consensual relationship based on the intent of the parties and may be created by implication. (*See* Miller and Starr, 2 Cal. Real. Est. §3:5 (3d. ed.).) The agency imposes strict fiduciary duties on the agent. (*Id.*)

197.   A real estate agent is a broker's agent. *See* Cal.Prac. Guide Pers. Inj. Ch. 2(II)-A. Plaintiffs' real estate agent acted as an agent to FIRST HORIZON/ FIRST TENNESSEE as evidenced by setting Plaintiffs up to obtain a loan through FIRST HORIZON/ FIRST TENNESSEE.

198.   Moreover, an employer is vicariously liable for the wrongful actions of its employees committed within the scope of the employment. (*See* Cal.Prac. Guide Pers. Inj. Ch. 2(II)-A; *de Villers v. County of San Diego,* (2007) 156 Cal.App.4th 238.)  To claim vicarious liability under respondeat superior rests on two elements—there must be an employment relationship; the act must be committed within the scope of employment. *See generally Modern Tort Law: Liability and Litigation § 7:2 (2nd ed).*  A broker remains vicariously liable under the doctrine of respondeat superior for the salesperson's tortious acts within the course of the licensing activities. (*See* Cal.Prac.Guide Real Prop. Trans. Ch. 2-A citing *Gipson v. Davis Realty Co.* (1963) 215 CA2d 190, 206.)  Ms. Harris was an employee of FIRST HORIZON at the time of the alleged incident.  The underwriters and originators, including Ms. Harris, who drafted the loan documents and closing agreements acted well within the scope of FIRST HORIZON's employment.

199.   FIRST HORIZON and its successor NATIONSTAR failed to properly train its originators and underwriters; rather, FIRST HORIZON (and its employee Ms. Harris) approved and originated loans that Plaintiffs could not afford.  Such actions amount to a breach of fiduciary duty of care owed to Plaintiffs.

200.   Accordingly, FIRST HORIZON, as principal, (and NATIONSTAR as successor in interest) are vicariously liable for the wrongful acts of its employees (including its underwriters and originators such as Ms. Harris) and are, therefore, liable for their breach of fiduciary duty against Plaintiffs.

201.    Typically, Negligent Lending, if it stands alone, has a two year statute of limitation. *Cal. Civ. Pro. Code § 335.1.* However, this claim for relief alleges fraud (as agreed to by the Order) which holds a four-year statute of limitations pursuant to Cal. Bus. & Prof. Code § 17208. Moreover, the statute of limitations may be equitably tolled in certain factual situations. Cal. Code of Civ. Proc. § 338(d) states that an action for relief on the ground of fraud or mistake is not deemed to have accrued until the discovery by the aggrieved party, of the facts constituting fraud or mistake." *Cal. Code. of Civ. Proc. § 338(d).*

202.    To date, Plaintiffs have yet to receive documentation relating to their loan in their native language pursuant to Cal. Civ. Code §1632 *et seq.* Thus the Statute of Limitations has not yet begun to run.

203.    Alternatively, the statute of limitations began to run in August 2011 when Plaintiffs retained an attorney, Mr. Chad Pratt, Sr., of the Real Estate Law Center PC on 30 N. Raymond Avenue, Penthouse; Pasadena, CA 91103.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF FINANCE LENDERS LAW

**[Cal. Fin. Code §§4973, et. seq., 220000, et seq. and 50000, et seq.]**

204.    Plaintiffs re-allege and incorporate by reference the above paragraphs as though set forth fully herein.

205.    The purpose of the California Finance Lenders Law is to protect borrowers against unfair practices by lenders and to encourage fair and economically sound lending practices. *See Cal. Fin. Code §2000 et seq.* This statute "shall be liberally construed and applied to promote its underlying purposes and policies...." *Id.*

206.    Section 2209 defines a "Finance Lender" to be "any person who is engaged in the business of making consumer loans or commercial loans" and section 22203 defines "consumer loan" to be "a loan, whether secured by either realtor personal property, or both, or unsecured, the proceeds of which are intended by the borrower for use primarily for personal, family or household purposes." *See* Cal. Fin. Code § 22009 & 22203.

207.    Additionally, California Financial Code section 22302 states that "section 1670.5 of the Civil Code applies to the provisions of a loan contract that is subject to this division."

208.   Plaintiffs   allege   that   FIRST   HORIZON/   FIRST   TENNESSEE   and NATIONSTAR as successor in interest set Plaintiffs up for likely or certain default in violation of the California law set forth above and public policy.

209.   California Financial Code sections 4970 and 4973, respectively, define "covered loans" and prohibited acts and limitations for covered loans.

210.   Specifically, "covered" loan is:

> A consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following convictions are met:
> (1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.
> (2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount.

211.   Defendants' definition of covered loan is far too broad and would exclude more loans than that what would appear to be the legislative intent in implementing section 4970, *et seq*. *See* Defendants explanation on pages 14-15 of their Motion to Dismiss. *See also* the Legislative Intent of West's Ann. Cal. Fin. Code §4970 ("In drafting legislation designed to combat predatory lending practices occurring typically in the subprime home mortgage market, the Legislature balanced two compelling and competing considerations, the need to protect particularly vulnerable consumers from predatory lending practices and the concern homeowners not be unduly hindered in accessing the equity in their own homes."

212.   Plaintiffs allege that their loan falls under the definition of a "covered loan" because the annual percentage rate at consummation of the transaction exceeded eight percentage rate of the contemporaneous yield on Treasury securities.  Plaintiffs allege that their Contract APR on the TILA form was 4.89%.  See **Exhibit G.**  The treasury yield on the 15th day of the month preceding the closing date of October 28, 2004 (September 15, 2004), was 4.09%.  See **Exhibit K.**  The difference between the Contract APR and the treasury yield was, therefore, 17%, which is far above the 8% requirement for a loan to be "covered."  As such, Plaintiffs' loan was indeed a "covered" loan.

213.   Plaintiffs allege that Defendants violated section 4973, particularly section 4973(l)(1) which states in relevant part that "[a] person who originates a covered loan shall not steer, counsel, or direct any prospective consumer to accept a loan product with a risk grade less favorable than the risk grade that the consumer would qualify for based on that person's then current underwriting guidelines, prudently applied, considering the information available to that person, including the information provided by the consumer." *Cal. Fin. § 4973(l)(1).*

214.   Plaintiffs allege that FIRST HORIZON/FIRST TENNESSEE and NATIONSTAR as successor in interest, misled and "steered" Plaintiffs into signing a loan that Defendants knew or should have known Plaintiffs could not afford.  Plaintiffs were also steered into signing because Defendants took advantage of Plaintiffs' limited English and none of the Defendants (including NATIONSTAR as successor) provided Plaintiffs with a Vietnamese translation; rather Defendants merely told Plaintiffs to "sign here."  Plaintiffs were further misled into believing they would receive a loan modification after Plaintiffs fully complied with the trial plan.  Therefore, Plaintiffs allege Defendants violated sections 4970, 4973 *et seq.*

215.   Moreover, Plaintiffs allege that section 4970, *et seq.* is not preempted because state laws may be more restrictive than federal laws and section 4970 *et seq.* is much more restrictive than the federal law cited by Defendants because 4970 covers areas not covered by the federal law. *(12 C.F.R. 34.4(b)(4))*  For instance, unlike section 4970, section 12 C.F.R. 3.44(b) does not attempt to address the unaffordability of the loan.

216.   Furthermore, Plaintiffs further allege that FIRST HORIZON/ FIRST TENNESSEE and NATIONSTAR as successor in interest violated the California Residential Mortgage Lending Act (Fin. Code §50000, *et seq.*) and in particular, Cal. Fin. Code § 50204 which states:

"A licensee may not do any of the following:…

(g) Engage in **fraudulent home mortgage underwriting practices.**

(i) Engage in any acts in **violation of Section 17200** or 17500 of the Business and Professions Code.

(k) Do an act…that constitutes **fraud or dishonest** dealings.

(m) Commit an act in violation of Section 1695.13 of the Civil Code."

217.   Plaintiffs allege that Defendants engaged in fraudulent home mortgage practices because they intentionally failed to provide a Vietnamese translation and failed to request for verification information while drafting the application hastily over the phone. As mentioned, *supra,* Plaintiffs also allege that Defendants committed fraud, violated sections 17200 and 17500 of the Business and Professions Code, and violated Section 1695.13 of the Civil Code. As such, Defendants violated Financial Code section 50000, *et seq.*

218.   In prior pleadings, Defendants allege that the California Residential Mortgage Lending Act only applied to "licensees" and FIRST TENNESSEE was exempt from the license requirement as a federal bank. Nevertheless, Defendants failed to mention that FIRST TENNESSEE did indeed obtain a license to operate business in the state of California according to the Secretary of State of California (and attached hereto as **Exhibit K**). Therefore, Plaintiffs allege that the California Residential Mortgage Lending Act applies to all defendants including FIRST TENNESSEE.

219.   Plaintiffs further allege that FIRST HORIZON/ FIRST TENNESSEE and NATIONSTAR as successor in interest, violated Financial Code sections 22000, *et seq.* and 50000, *et seq.* by (1) failing to disclose critical information to the Plaintiffs prior to the closing of the loan, including, but not limited to, the total amount of the interest the highest payment possible upon adjustment of the loans or on reset of the loans; (2) failing to properly qualify the borrowers for the types of subprime loans sold to them, thereby setting them up for certain default; (3) by fraudulently failing to disclose to Plaintiffs prior to closing, that their mortgage loan would be bundled and sold to third party investors in violation of the Plaintiffs' contractual rights and remedies, (4) other egregious violations such as excessive and bogus fees at the time of closing, (5) failing to provide a Vietnamese translator or a translation of the documents to Plaintiffs, and (6) purposefully or negligently not requesting for verification of income while hastily drafting the loan application over the phone with no interpreter.

220.   Lastly, Plaintiffs once again allege that the statute of limitations has been equitably tolled (in particular because Plaintiffs were not provided with a Vietnamese translation, because Plaintiffs were not properly disclosed the amount of fees paid to the broker and any kickbacks to FIRST HORIZON, and because Plaintiffs were misled into believing that they would achieve a loan modification under the trial plan). See **Exhibit G** (Closing

Instructions, page 2). Because to date Plaintiffs have not received a Vietnamese translation of these documents, Plaintiffs allege that the statute of limitations is still tolling and has not run.

221.    As a direct and consequential result of the acts and omissions of Defendants, their agents, affiliates and assigns, Plaintiffs were caused to suffer the threatened foreclosure and loss of their home, mental and emotional trauma and damage to their credit rating, distress and other damages yet to be determined and calculated. In addition, Plaintiffs allege that Defendants' acts were done maliciously and violated the duties owed to Plaintiffs under the above statutes and are subject to the recovery of punitive damages.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT**

**Cal. Civ. Code § 1788.1**

**(As against all Defendants)**

222.    Plaintiffs re-allege and incorporate by reference each and every other paragraph contained herein.

223.    The Rosenthal Fair Debt Collection Practices Act or "RFDCPA" (Cal. Civil Code 1788 et. seq. and the similar federal Fair Debt Collections Act 15 U.S.C.A. § 1692a *et seq.*), regulates the collection of consumer debts. Consumer debts are those "incurred by natural persons to acquire property, services, or money for personal, family, or household use." *See Cal. Civ. Code § 1788.2(b), (e), (f), (h); see also 8 Witkin, Cal. Proc. 5th (2008).*

224.    The Act forbids unfair and deceptive practices. Practices defined as unfair and deceptive under this Act include threats and harassment. *(Cal. Civ. Code §1788.11).*

225.    The Act applies to persons and entities engaged in the debt collection business, or who compose and sell forms, letters, and other collection media. *Cal. Civ. Code §1788.2(c), (g); see also 8 Witkin, Cal. Proc. 5th (2008).*

226.    The Fair Debt Collections Act (as it appears in 15 U.S.C.A. § 1692a *et seq.*) regulates the practices of "debt collectors."

227.    A debt collector may include, but is not limited to, creditors who are collecting their own debts but who use a name other than their own, which would indicate that a third person is collecting or attempting to collect the debt(s). *See generally Fleeger v. Bell*, 95 F. Supp. 2d 1126.

228.   California residents are afforded double-protection under the Rosenthal Act and the federal Fair Debt Collections Practices Act.

229.   The RFDCPA applies to persons and entities engaged in the debt collection business, or who compose and sell forms, letters, and other collection media. *Cal. Civ. Code* §1788.2(c), (g); *see also* 8 Witkin, Cal. Proc. 5th (2008).

230.   In California, third-party debt collectors subject to the federal Fair Debt Collection Practices are required to provide notice to debtors regarding their rights under the Act. *Cal. Civ. Code  1812.700(a).*

231.   Under California's Rosenthal Act, a "debt collector" includes anyone "who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection" *See Cal. Civ. Code §§ 1788 et seq.*

232.   15 U.S.C. §1692, *Heintz v. Jenkins (514 U.S. 291 (1995))* and *In re Pearl Maxwell* (281 B.R. 101 (Massachusetts 2002)) conclude that anyone other than the Original Lender of the Note falls under Section 1692 because they are Third Party Debt Collectors. A Trustee is an Agent of the Third Party Debt Collector. If Quality Loan Services is a Trustee for Defendants, then Quality Loan is an indirect Third Party Debt Collector.

233.   The notice must include the following: "The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or buy using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov." *Cal. Civ. Code § 1812.70(a).*

234.   Cal. Civ. Code §1812.70 (b) states that "the notice shall be included with the first written notice initially addressed to a California address of a debtor in connection with collecting the debt by the third party debt collector."

235.   Cal. Civ. Code § 1812 (c) states that "[if] a language other than English is principally used by the third-party debt collector in the initial oral contact with the debtor, a notice shall be provided to the debtor in that language within five working days.

236.   A third party debt collector is a collection agency engaged in the business of collecting a debt that the agency did not originate.

237.   Defendant FIRST HORIZON Home Loan Corporation is the loan originator as is evident on the Deed. In 2008, MetLife Bank, N.A. ("MetLife), a division of MetLife, Inc., purchased most, if not all, of FIRST HORIZON National Corp. FIRST HORIZON National Corp. is owned by the parent company FIRST TENNESSEE. While the loan was under the ownership of MetLife and/or Defendants, Quality Loan Services acted as a third party debt collector.

238.   On November 20, 2009, Quality Loan Service Corp's Home Retention Department sent Plaintiffs a letter with the caption "THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT" written on the top of the letter.

239.   To Plaintiffs knowledge, information, and belief, Plaintiffs did not receive any notices from Defendants or their third parties regarding their rights set forth under the Rosenthal Fair Debt Collection Act. At no time did any of the correspondences in which Plaintiffs received had the required phrase:  "The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or buy using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov."

240.   Defendants also did not provide any notices in Vietnamese under section 1632 *et seq.*

241.   Therefore, Defendants are in violation of the Fair Debt Collections Act by not providing the required caption in their initial letter to Plaintiffs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray judgment as follows:

1) For a Judgment in Plaintiffs' favor.

2) For compensatory damages in an amount to be determined by proof at trial.

3) For punitive damages in an amount to be determined by proof at trial.

4) For special damages in an amount to be determined by proof at trial.

5) For general damages in an amount to be determined by proof at trial.

6) For treble damages in an amount to be determined by proof at trial.

7) For rescission of the loan contracts and restitution of all principal and interest as well as any and all costs and fees paid on the loans.

8) For attorney's fees and costs of this action.

9) For a declaration that Plaintiffs are the prevailing party.

10) For any prejudgment or other interest according to law.

11) For any temporary, preliminary, and permanent injunctive relieve the Court considers just and proper against Defendants.

12) For pre-and post-judgment interest.

13) For any other and further relief that the Court considers just and proper.

14) For leave to amend if the court deems just and proper.

Dated: January 17, 2013

THE LAW OFFICE OF MICHAEL A. ALFRED

_____s/ Michael A. Alfred_____

Michael A. Alfred, Esq. (SBN 113716)

Attorney for Plaintiffs,

HIEN LE DANG & THANH HUNG NGUYEN

JAN-21-2000  15:57       SCRIPPS CLINIC                        8585545204    P.001

## VERIFICATION

1    We, HIEN LE DANG and THANH HUNG NGUYEN, are Plaintiffs in the above-
2  entitled action. We have read the foregoing Amended Complaint to the best of our ability and
3  have had our daughter translate into Vietnamese the contents of this Amended Complaint.
4  Therefore, we know the contents thereof. The same is true of our own knowledge, except as to
5  those matters, which are therein alleged on information and belief, and as to those matters, we
6  believe it to be true. We declare under penalty of perjury that the foregoing is true and correct
7  and that this declaration was executed this ___17th___ day of January, 2013, in San Diego,
8  California.

9

10

11                                    _____
12                                    HIEN LE DANG

13

14

15

16

17                                    _____
18                                    THANH HUNG NGUYEN

19

20

21

22

23

24

25

26

27

28

### DECLARATION

#### Hien Le Dang and Thanh Nguyen

We are the Plaintiffs in the above-mentioned action. We contest that the statements below are true to the best of my belief.

1. In 2004, we signed a loan with First Horizon Home Loans. Our agent was a Ms. Margaret Harris. The conversation took place over the phone. To our knowledge and belief, we do not recall Agent Harris ever asking for previous income.

2. We never received paper work regarding our loan origination or our loan modification in our native language, Vietnamese.

3. Before we applied for a loan modification, we only missed three payments total and we only missed these payments because we were told by the Bank that in order to qualify for a loan modification we had to miss three consecutive payments. I, Hien Le Dang, was out of work and had difficulty finding re-employment from 2007 to 2009. Nonetheless, we exhausted our savings to make our payments. We then resumed making timely payments during 2009-2011. During the Trial Payment Plan, we made all payments and paid on time.

4. To our knowledge and belief, we applied for a loan modification on August 19, 2009. On or around July 2010, we were placed on a Trial Payment Plan. On multiple occasions, I contacted agents including Agent Christine Hemmen, but no one would give me an accurate update of the status of our loan modification or trial payment period. Below is a ledger of my (Hien Le Dang's) notes:

   - 9/17/2009: called (866) 814-4414 re: loan mod approval.
   - 0/29/2009: spoke with Javier (MetLife in TX)
   - 9/29/09: called and spoke with agent who said do not make a payment until they receive the loan modification paperwork
   - 10/01/2009: spoke with Gloria (MetLife) and she'll let her supervisor review and help stop foreclosure.
   - 11/3/2009 [spoke with agent]; "still process."
   - 12/29/2009: [spoke with] Tiffany.

JAN-21-2000  15:57      SCRIPPS CLINIC                8585545204    P.003

- 2/2/2010 Christine Hemmen called and left message. Call back 214-441-6147; 800-364-7662 ext. 33805.
- 1/30/2010: [spoke with] Chanel. 888-638-6964.
- 2/5/2010: [spoke with] Anthony.
- 2/3/2010: Jane and Shanna. 800-364-7662; 888-638-6964.
- 2/4/2010: called Christine and left message. 888-638-6964.
- 2/5/2010. Left message to have Christine call me.
- 2/11/2010. [spoke with] Liz. Left message to have Christine call me back 858-638-6964.
- 2/11/2010. [spoke with] Edwin. 877-844-8789.
- 2/16/2010 [spoke with] Jay.
- 2/17/2010 [spoke with] Victor.
- 2/18/2010:[ Called] (877-844-8789) and spoke with Kim who left message to Christine.
- 2/25/2010: [spoke with] Jill.
- 3/4/2010: [Called] (877-844-8789) and spoke with Jessica.
- 3/8/2010: [Called] (877-844-8789) and spoke with Jivado.
- 3/10/2010: [Called] (877) 844-8789 and spoke with Brandon.
- 3/17/2010: [spoke with] Wayne.
- 4/8/2010 [spoke with] Lefum.
- 4/15/2010. [spoke with] Shena.
- 5/14/2010 : [spoke with] Brandon and gave Kristin Hemmen a message.
- 5/19/2010 [spoke with] Jose.
- 5/23/2010 Emailed Fran Gonzalez.
- 5/24/2010:[ called] (877-844-8789) and spoke with Ivan.  Still process and give her some time.
- June 8/2010:[ called and spoke with] Mia. Submit loan mod to processor.
- 6/10/2010: [spoke with ] Brandon.
- 6/22/2010: [called and spoke with] Nash; update and 2 month pay stub and BK [bank] statement and Finance statement.

JAN-21-2000  15:58        SCRIPPS CLINIC                    8585545204    P.004

- 6/23/2010 fax to loss mitigation pay stub and emailed Hemmen too. [Called] Eneka to confirm.
- 6/24/2010 [called] Marcy and give Kristin message for update.
- 6/28/2010 [called] Rhonda. Will call back with update.
- 7/1/2010 [called] Tina. [paperwork] Received.

5. We sent all required documents into First Horizon and were placed on a trial period in 2010.

6. We paid the required $2,650 payments during the three month trial period and beyond for an additional four months.

7. Our monthly mortgage before the trial payment plan was approximately $2,204.17.

8. To our knowledge and belief, we were never notified as to why that plan ended and as to why the loan modification was not approved.

We allege under penalty of perjury that the above statements are true and from our own information and belief.

Dated: ___1 - 17 - 13_____          HIEN LE DANG

                                       _____
                                              PLAINTIFF

Dated: ___1/17/13_____              THANH NGUYEN

                                       _____
                                              PLAINTIFF

99